IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMEEKA MELTON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 20-3984 |
| KILOLO KIJAKAZI,[1] | : | |
| ACTING COMMISSIONER OF THE | : | |
| SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE           November 4, 2022

Plaintiff Tameeka Melton brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") concerning her entitlement to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Pursuant to an earlier decision, Melton had been found to be disabled beginning in 2000 and qualified for SSI benefits. In a subsequent review of her file, however, the Commissioner found that her medical condition had improved such that she was no longer disabled as of December 2013.

Presently before the Court are Plaintiff's Motion for Summary Judgment (Doc. 19) and her Brief in Support of Motion for Summary Judgment and Statement of Issues in Support of Request for Review (Doc. 19-1) ("Pl. Br."); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 20); and Plaintiff's Reply Brief (Doc. 23); together with the record of the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

proceedings before the Administrative Law Judge ("ALJ") (Doc. 14). Plaintiff asks the Court to reverse the decision of the Commissioner terminating her benefits or alternatively to remand the case for further consideration. (Doc. 19 at 1.) The Commissioner seeks the entry of an order affirming the decision of the ALJ. (Def. Br. at 26.) For the reasons set out below, we deny Plaintiff's motion for summary judgment and affirm the administrative decision.

I.  **FACTUAL AND PROCEDURAL HISTORY**

The request for review presently before the Court concerns an administrative decision rendered by an ALJ on May 17, 2019. Inasmuch as that decision terminated benefits that had been awarded previously, we recount the history of both the favorable and unfavorable decisions.

   A.  **Initial record development**

Melton first sought SSI with a protective filing made on November 14, 2000, following upon a psychiatric emergency room visit in September 2000 for depression. She was 27 years old at that time and had a limited work history as a telemarketer, cashier in a fast food restaurant, and shipper/handler in a post office. She alleged disability due to depression, crying spells, and asthma. At the request of the state agency, she underwent a clinical psychological consultative examination on March 8, 2001 with P. Lawrence Seifer, Ph.D., who opined that her ability to deal with work stresses due to mental impairments rated as "poor to none." (R. 1692.) The state agency, however, denied her claim on April 19, 2001. (*See generally* R. 106-08.)

Melton requested a hearing before an ALJ and retained counsel, who submitted additional medical documentation of her condition. Those records included: (1) a May 17, 2001 psychiatric evaluation by Michel Bien-Aimé, M.D., at a clinic at which Melton sought medication and psychotherapy (R. 937-42); (2) a January 8, 2002 assessment by a clinical psychologist, Virginia Smith, Ph.D., at a different clinic at which Melton also sought services for depression (R. 932-34);

and (3) a report of psychological testing conducted by Rudy Horwitz, Psy.D., on January 22, 2003, upon referral by a social services organization (R. 428-32). The ALJ to whom her case was assigned, the Honorable Richard A. Kelly ("ALJ Kelly"), invited a medical expert, Dr. Daniel Berg, in addition to a vocational expert ("VE"), to participate in Melton's hearing.

B. **The first administrative decision**

Upon review of the record, and with the benefit of the medical expert opinion offered at the February 28, 2003 hearing, ALJ Kelly concluded that Melton would be incapable of making a successful adjustment to any work that existed in significant numbers in the national economy. His decision endorsed the mental residual functional capacity ("RFC") opinion and limitations as set forth by the consultative examiner, Dr. Seifer, from his March 2001 evaluation. *See* R. 110 (referencing Dr. Seifer findings at Ex. 3F as RFC). The ALJ concluded that Melton had been under a disability since the date of her SSI application, November 14, 2000, and continuing through the date of decision, which was May 8, 2003. (R. 110-11.)

C. **Further development of the record**

In 2013, ten years after the earlier favorable decision, the state agency conducted a routine "Continuing Disability Review" of Melton's file.[2] It obtained records from the Al-Assist Behavioral Health Care Center, documenting another evaluation by Dr. Bien-Aimé in 2004 and the medication maintenance records of Dr. Bien-Aimé and clinic colleagues from April 2011[3]

---

[2] As noted in the Commissioner's Regulations: "There is a statutory requirement that, if [someone is] entitled to disability benefits, [their] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994(a). This is true of both the SSI and DIB programs. *See, e.g.,* 20 C.F.R. § 404.1594(a) (Regulations applicable to DIB).

[3] While the April 2011 note appears to reflect a continuation of prior treatment (reflecting that Melton was doing well with her medications, etc.), it is the first note included in the record from this clinic following the June 2004 evaluation of Dr. Bien-Aimé.

through July 2013. (R. 409-27.) The state agency also had one of its clinical psychologists, John Gavazzi, Psy.D., review the file to assess Melton's current level of impairment due to psychiatric conditions. It provided Dr. Gavazzi with the earlier ALJ decision that had found Melton disabled based on depression and based upon the testimony of Dr. Bruce Berg, the medical expert who appeared at the 2003 hearing before ALJ Kelly. (R. 580.) Dr. Gavazzi opined that Melton did not have a severe impairment as of the time of his review and that "medical improvement has occurred."[4] (R. 568.)

### D. The second administrative decision; subsequent ALJ hearing

On December 16, 2013, the State agency issued to Melton a Notice of Disability Cessation, advising her that she was found no longer disabled as of that month. (R. 98-101.) Melton requested reconsideration. (R. 135-38.) The state agency obtained an assessment of the record from a different clinical psychologist, Elizabeth Hoffman, Ph.D., on June 24, 2014[5] (R. 610-25), but ultimately denied reconsideration on July 9, 2014. Melton requested further review, which at that point involved a hearing before a State agency Disability Hearing Officer. After holding a hearing, the Hearing Officer issued a decision dated February 17, 2015, finding that Melton had experienced medical improvement and that, despite her severe impairments, she was capable of performing unskilled work in a setting requiring only low social interaction. (R. 151-62.)

---

[4] We discuss in greater detail below the standard for and impact of a finding of "medical improvement."

[5] Dr. Hoffman does not appear to have considered the specific question of whether Melton had experienced medical improvement since 2003 as Dr. Gavizzi did. Rather, she offered simply a current assessment of Melton, opining that Melton had a severe impairment (depressive disorder not otherwise specified), which gave rise to moderate limitations in many areas of functioning, but which was not disabling.

Melton then exercised her right to request a hearing before an ALJ on this question of whether her disability had ceased. The Honorable Raymond L. Souza ("ALJ Souza") convened a hearing on April 11, 2017, at which Melton appeared with counsel. On May 3, 2017, ALJ Souza issued an unfavorable decision, consistent with the earlier finding of the state agency, that Melton's period of disability ended in December 2013 and that she had not become disabled again since that date. (R. 102-12.) Melton sought review in the Appeals Council, and that body agreed that errors of law in ALJ Souza's decision required that it be vacated.[6] (R. 128-31.)

Upon remand, and following additions to the record, a different ALJ, the Honorable Robert J. Ryan ("ALJ Ryan"), convened a hearing on April 5, 2019, at which Melton appeared with counsel and at which a VE also participated. (R. 33-66.) ALJ Ryan issued a decision on May 17, 2019, finding that Melton experienced medical improvement and that her disability ended in December 2013. (R. 15-25.) Melton again sought review in the Appeals Council. This time, however, the ALJ's decision was affirmed and her request for review was denied. As a result, the May 17, 2019 decision of ALJ Ryan became the final decision of the Commissioner. This litigation followed.

## II.   STANDARD OF REVIEW

This Court must determine whether substantial evidence supports the Commissioner's decision, through ALJ Ryan, that Melton's disability ended in December 2013. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[6] The Appeals Council noted that the hearing office had not obtained and marked as exhibits all of the relevant documents from Melton's prior file. It noted that the current file did not contain a copy of the prior ALJ hearing decision and that "[w]ithout the relevant documents from the prior paper folder, there can be no finding of medical improvement." (R. 129 (citing 20 CFR 416.994(b)(2)(iv)(E).)

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552. The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III. DECISION UNDER REVIEW

The issues before ALJ Ryan at the time of his review in 2019 were: (1) whether Melton's disability, which was recognized by ALJ Kelly to have begun in November 2000, ended by December 2013; and (2) whether, as of the May 17, 2019 date of his decision and looking back to December 2013, Melton had become disabled again at any point. (R. 15-25.)

As noted above, there is a statutory requirement that the continued entitlement to disability benefits for one who has been found to be disabled "must be reviewed periodically." 20 C.F.R. § 416.994(a). The Regulations set forth the process that the Commissioner will utilize to decide whether an individual's disability continues. A key component of the continuing disability review is the determination of whether there has been any "medical improvement" in the individual's impairments and, if so, whether this medical improvement is related to the ability to work. 20 C.F.R. § 416.994(b). "Medical improvement" is defined in these Regulations as "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled[.]"[7] 20 C.F.R. § 416.994(b)(2)(i). Medical improvement "is determined by a comparison of prior and current

---

[7] That earlier favorable decision is referred to as the "comparison point decision."

medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.*

To resolve the question of whether Melton's disability continued, ALJ Ryan was required to employ an eight-step sequential evaluation process set out at 20 C.F.R. § 416.994. *See* R. 15-16 (describing process).[8] Step One requires the ALJ to consider whether Melton met the criteria of any of "the listings" at any time since the date of the alleged improvement, as this would have resulted in a finding that she was still disabled. He found that she did not. (R. 17, Finding No. 4.) At Step Two, the ALJ was required to make a finding as to "medical improvement," which, as noted above, is defined as any decrease in medical severity of the impairments that were present at the time of the comparison point decision ("CPD"). In Melton's case, the CPD was ALJ Kelly's May 8, 2003 decision, finding that she had been disabled since November 2000. The ALJ here, Judge Ryan, found that medical improvement **had occurred** as of December 2013. (R. 19, Finding No. 5.) Pursuant to the evaluation process, the analysis proceeded to Step Three for an assessment of whether the medical improvement was "related to the ability to work." ALJ Ryan found that it was, inasmuch as his assessment of Melton's current residual functional capacity ("RFC"), as well as her RFC at all times since December 2013, was less restrictive than her RFC at the time of the CPD. (R. 23, Finding No. 7.) Step Four of the analysis involves an assessment of whether any of the exceptions to medical improvement that are set out in the Regulations apply. ALJ Ryan did not make a finding in that regard.

Step Five involves an evaluation of whether the individual's current impairments in combination were "severe" within the meaning of the Regulations. If they were not, the disability would be found to have ended, but ALJ Ryan agreed that Melton's impairments had continued to

---

[8] Plaintiff contends that ALJ Ryan did not adhere to this process.

be severe. (R. 23, Finding No. 8.) At Step Six, the ALJ was to assess the RFC, which is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). He was to make this determination beginning on the date at which medical improvement had occurred, which in Melton's case was believed to be December 2013. ALJ Ryan made the following finding:

> **5. After careful consideration of the entire record, the undersigned finds that, beginning in December 2013, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive tasks; few workplace changes; no production rate or assembly line work; no interaction with the general public; and can work in proximity to others but not in tandem with them or as part of a team.**

(R. 19, Finding No. 6.)

Step Seven would have required a comparison of this RFC to the demands of Melton's past relevant work, but the positions she held in the remote past did not qualify as past relevant work, which meant that no finding could be made at this step. (R. 23, Finding No. 9.) Therefore, the analysis continued to the final step, for an evaluation of whether that RFC permitted the performance of "other" work that existed in significant numbers in the national economy. ALJ Ryan considered the extent to which the occupational base was eroded by the nonexertional restrictions included in the RFC finding. He also referred to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, as a framework for decisionmaking. Relying upon VE testimony that the positions of janitor, housekeeping cleaner, and "addresser" were not precluded by someone with what he found to be Melton's current RFC, the ALJ determined that there were occupations that Melton could perform that existed in significant numbers in the national economy. (R. 24, Finding No. 13.) Accordingly, he concluded that Melton had not become disabled again after her disability ended in December 2013. (R. 24, Finding No. 14.)

IV.   DISCUSSION

Plaintiff contends that ALJ Ryan's decision must be vacated because it both failed to follow the Commissioner's Regulations regarding the process for determining that disability had ended and was not supported by substantial evidence in the record. We cannot agree.

### A.   The ALJ did not commit legal error and fail to follow the Regulations in his analysis of medical improvement.

Plaintiff contends that the ALJ's continuing disability review analysis was fatally flawed as a matter of law in that he did not adhere to the evaluation process proscribed by the Regulations. She specifically asserts that ALJ Ryan failed to compare the later medical evidence to the benchmark of ALJ Kelly's 2003 decision, resulting in him judging Melton's condition from a blank slate and making his own assessment as to whether she was disabled. The Commissioner responds that Plaintiff has read ALJ Ryan's decision too narrowly and that, when read as a whole, he conducted a proper analysis and cited to substantial evidence of medical improvement, justifying the cessation of benefits.

Medical improvement, as defined in the Regulations, reflects a "decrease in medical severity" of the impairments that were present at the time of the CPD, "as established by improvement in symptoms, signs and/or laboratory findings." 20 C.F.R. § 416.994(b)(1)(i). In the portion of his decision supporting his finding that medical improvement occurred as of December 2013, ALJ Ryan provided the following discussion:

> The medical evidence supports a finding that by December 2013, there had been a decrease in the medical severity of the impairments. The claimant's anxiety and depressive symptoms have become more manageable with reports that the claimant is generally doing well on her medication with improved mood, anxiety, and sleep, thus allowing her to function at a higher level (e.g., Exhs. 8F, 14F, 15F, 22F).

(R. 19.) Plaintiff contends that this analysis was inadequate, and that when viewed in relation to

9

the rest of the decision, it reveals that the ALJ was more interested in assessing for himself whether she was disabled, without any regard to the prior decision.

We can appreciate Plaintiff's concerns given the brevity of discussion of a critical question in the continuing disability review. However, we do not find any legal error in that analysis. Earlier in the decision, the ALJ accurately recited that at the time of the CPD, that is, ALJ Kelly's May 2003 decision, Melton had the following medically determinable impairments: major depression with dysthymia; borderline intellectual functioning; anxiety; asthma; and anemia. (R. 17, Finding No. 2.) ALJ Ryan also noted that these impairments resulted in an RFC finding that she had "poor to no" ability to deal with work stresses; a "fair" ability to deal with the public, use judgment, interact with supervisors, function independently, maintain attention/concentration, and understand, remember, and carry out complex job instructions; and "good" ability to follow work rules, relate to co-workers, and understand, remember, and carry out simple or detailed job instructions. (*Id.*) We note that the 2001 consultative report of Dr. Seifer, on which ALJ Kelly heavily relied in 2003 and to which ALJ Ryan referred in 2019, noted Melton's complaints of depression, sleep difficulties, lack of interest, and low energy. (R. 1689.) The other evaluations from around the time of Dr. Seifer's evaluation that were also endorsed by ALJ Kelly when he found Melton disabled echoed those complaints. For example, Dr. Smith's evaluation from 2002 recounted Melton's complaints of "depression, crying spells, insomnia, withdrawal, [and] poor appetite with weight loss." (R. 932.)

In order for ALJ Ryan to find "medical improvement," there had to have been later symptoms, signs, and/or laboratory findings that were less severe than they had been in relation to the impairments that contributed to disability during the period from November 2000 to May 2003, when Judge Kelly described them in the CPD and as were found in the record before him. ALJ

10

Ryan made such findings. He pointed to these same impairments of depression and sleep difficulties and noted their improvement. *See* R. 19 (citing "improved mood … and sleep," which allowed for higher functioning). And the portions of the record that he cited as exemplifying this improvement – *see* R. 19 (citing, "e.g., Exh. 8F, 14F, 15F, 22F") – hold true. Exhibit 8F encompassed mental health clinic records between November 2013 and May 2014. The two notations from Dr. Bien-Aimé that were included in this time period documented that she was doing well on her medications, which can be understood to mean that her medications were controlling her symptoms and not causing side-effects. Even when Melton presented with a "down" mood on one visit due to a setback with her SSI benefits, Dr. Bien-Aimé made no adjustment to her medication regimen. This again supports the conclusion that her medications provided adequate control of her symptoms. Exhibit 14F extends into the period of 2014 to 2016 and continues to document that she was doing well with her medications, e.g., that they were effective in controlling her symptoms. This leaves us satisfied that the ALJ followed the correct process to examine the question of whether Melton experienced medical improvement such that her disability ceased as of that time.[9] We do not find any reversible error in the ALJ's process of answering the question before him on Plaintiff's request for a hearing on the cessation decision.

      **B.**    **The ALJ's finding that Melton experienced medical improvement was supported by substantial evidence.**

Plaintiff also challenges the factual underpinnings of the ALJ's finding at Step Three of the Eight-Step sequential evaluation process that she experienced medical improvement as defined

---

[9] We note that Plaintiff faults large sections of the ALJ's decision as focusing on irrelevant impairments or the symptoms of particular impairments that were not relevant to the CPD determination that she was disabled. But the areas in which she finds fault are the later sections of the ALJ's decision where, having found medical improvement, he was required to assess current RFC. Therefore, Plaintiff, more than the ALJ, misapplies the sequential evaluation process with this argument.

by the Regulations. She contends that the ALJ relied upon lay opinions rather than medical findings when evaluating this question. (Pl. Br. at 14-16.) She also challenges whether the evidence to which the ALJ pointed fairly supported his finding that medical improvement had occurred. (Pl. Br. at 11-14.)

Melton was found to be disabled in the 2003 decision at the final step of the Five-Step Sequential Evaluation Process that ALJ Kelly undertook. ALJ Kelly credited the testimony of a VE that there were no jobs that existed in substantial numbers that Melton could perform in light of the RFC that Judge Kelly found her to possess: the "capacity to perform basic work-related tasks, except that she [had] only a 'fair' capacity to deal with the public, use judgment, interact with supervisors, function independently, maintain concentration and attention, or cope with complex job instructions, and she [had] 'poor/none' capacity to deal with work stresses." (R. 107.) These limitations arose from the severe, medically-determinable impairment that ALJ Kelly described as "major depressive disorder with dysthymia." (R. 100.) ALJ Kelly's opinion documented the claimant's testimony in 2003 and her complaints to providers and evaluators in the two prior years, all of which recounted crying spells, depression, insomnia, decreased energy, and decreased social functioning. *See* R. 107 (citing hearing testimony); R. 108 (describing Dr. Bien-Aimé examination from 2001); R. 108 (describing Dr. Smith evaluation from 2002).

ALJ Ryan's succinct explanation of his medical improvement finding reveals that he focused upon Melton's "anxiety and depressive symptoms" of major depressive disorder with dysthymia, which is clearly appropriate given that this impairment was what was found in 2003 to have so restricted Melton's functional capacity. (R. 19.) ALJ Ryan appropriately turned to records from late 2013 and thereafter to evaluate whether Melton had experienced any decrease in the medical severity of her impairments. He concluded that the symptoms "have become more

manageable," as evidenced by "reports that the claimant is generally doing well on her medication," which allowed her "to function at a higher level," "with improved mood, anxiety, and sleep[.]" (R. 19.) He cited as supportive examples Exhibits 8F, 14F, 15F, and 22F. (R. 19.)[10] The exhibits to which ALJ Ryan cited for his conclusion that Melton was functioning at a higher level and able to manage her symptoms consist of sets of records documenting Melton's treatment at Greater Philadelphia Health Action broadly covering the period from November 2013 to January 2019. The record also contained earlier records from some of that organization's clinics. *See* Ex. 2F (Dr. Bien-Aimé, M.D. of GPHA Al-Assist clinic from 6/17/2004 and 2011 to 1/22/2013 (R. 409-427)); Ex. 5F (GPHA Woodland Avenue Health Center from 11/14/2006 to 9/23/2013). The records therein from late 2013 reflect *no* crying spells; *no* decreased energy; *no* notations about her social functioning being impaired. She is less often described as anxious; generally the psychiatry notes merely document that she was "doing well" or "doing okay" on her medications, with no side effects. *See also* R. 419 (reporting "less anxiety" and psychiatrist observation that "anxiety under better control" on 6/20/12); R. 418 (reporting on 8/7/12 that "med helps" but that she is "more anxious when out of the house"). Thus, her medications were largely proven effective in managing her most disruptive symptoms, as noted by ALJ Ryan. To be sure, there were some ups and downs with her sleep, which had been one symptom of her depression in 2003. But within a few visits and adjustment in medications, Melton seemed to recover better sleep. *See* R. 417-19 (psychiatrist notes from June to September 2012 in Exhibit 2F). Overall, and particularly with the improvement in the crying spells, the records cited by ALJ Ryan support his finding that her

---

[10] Again, this finding followed after he had demonstrated his awareness of the contours of the CPD. *See* R. 17, Finding No. 2 (reciting Melton's impairments as of the time of the CPD and reciting RFC "set out by Dr. Lawrence Seifer in March 2001" found at "Exh. 29F").

13

medications helped to improve her mood, anxiety, and sleep, and enabled improved functioning.[11] (R. 19.)

The ALJ's conclusion – that "medical improvement occurred" in Melton's major depression with dysthymia from the period of 2000-2003 (described in the comparison point decision) to December 2013 – is supported by substantial evidence. The ALJ's finding at Step Three of the Eight-Step evaluation thus does not provide a basis for vacating the decision.

  **C. Was the ALJ's finding that Melton is not presently disabled supported by substantial evidence?**

Plaintiff identifies the subsequent findings of the ALJ from the Eight-Step evaluation process as ones that she challenges in her request for review. *See* Pl. Br. at 4 (listing findings to which she objects as legally erroneous or lacking in support by substantial evidence). Her brief, however, focuses singularly on the finding of medical improvement. She makes only a passing reference to a more recent opinion as to RFC that would be pertinent to the question of Melton's RFC since 2013. *See* Pl. Br. at 12. She otherwise does not express how the ALJ's RFC finding for the period after December 2013 is erroneous or unsupported by substantial evidence or whether there was any error in the ALJ's finding, based on the VE testimony, that Melton could perform various jobs that exist in the economy. The finding of RFC – which reflected accommodations for Melton's discomfort with others and some limitations on her ability to concentrate – is supported by "substantial evidence" in the record, and the VE's response to the ALJ's hypothetical questions based on that RFC finding adequately supports the final decision that Melton is capable of substantial gainful activity. There is thus no basis to set aside the ALJ's decision that she is not presently disabled and has not been since December 2013.

---

[11] As ALJ Ryan noted elsewhere in the decision, in 2016, Melton was able to obtain her GED. (R. 17, 20, 21, 23.)

## V.    CONCLUSION

ALJ Ryan found that Melton had experienced medical improvement by December 2013 as compared to her condition from 2000 to 2003, as captured in the comparison point decision of Judge Kelly.  ALJ Ryan further found that she was capable of a restricted range of simple work beginning in December 2013 based upon his assessment that Melton's limitations arising from her mental impairments could be accommodated in a job with few workplace changes, no production rate or assembly work, and limitations on interactions with and proximity to others.  The record provides substantial evidence supporting these conclusions.  Therefore, we find no basis to set aside the ALJ's May 17, 2019 decision.

An appropriate order follows.